# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.               Case No. 08-CR-270

**GARY QUEEN**
   **Defendant.**

## DECISION AND ORDER

Before me is defendant Gary Queen's motion to dismiss based on a violation of the Speedy Trial Act ("STA" or "the Act"). The government concedes that dismissal is warranted but asks that it be without prejudice. Defendant seeks the stiffer sanction of dismissal with prejudice. Under all the circumstances, I find dismissal without prejudice appropriate.

## I. BACKGROUND

On August 7, 2008, the government arrested defendant in North Dakota on a criminal complaint issued out of this district two days earlier charging use of a facility of interstate commerce to entice a minor to engage in sexual activity, contrary to 18 U.S.C. § 2422(b). The complaint alleged that defendant, using the internet and a cellular phone, arranged an encounter in Wisconsin with an undercover officer posing as a fifteen-year-old girl named "Maria."

Defendant appeared before a magistrate judge in North Dakota on August 8 and was ordered removed to this district. He arrived in the Eastern District of Wisconsin on September 22 and made his initial appearance before a magistrate judge. On September 26, the magistrate judge held a preliminary hearing, found probable cause and ordered defendant

detained pending trial. On October 15, the grand jury returned a one-count indictment charging a violation of 18 U.S.C. § 2422(b). At defendant's October 17 arraignment, the magistrate judge ordered that motions be filed by November 6, 2008.

After obtaining an extension, on November 19 defendant moved to dismiss the indictment based on a violation of the thirty-day rule set forth in the STA. 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."). In response, the government conceded a violation and agreed that dismissal was required, but asked that it be without prejudice.[1] In his reply, defendant simply asked that the court exercise its discretion to determine whether dismissal would be with or without prejudice. The magistrate judge issued a recommendation that the indictment be dismissed without prejudice.

Neither side objected to the recommendation. However, defendant filed a pro se request for dismissal with prejudice, along with a request for new counsel. I granted defendant's request for a new attorney, who now argues that the dismissal should be with prejudice. The government maintains that dismissal without prejudice is the appropriate

---

[1]The indictment was returned sixty-nine days after defendant's arrest. Although certain periods of time may be excluded under the STA, see 18 U.S.C. § 3161(h)(1)(E) ("delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure"); § 3161(h)(1)(F) ("delay resulting from transportation of any defendant from another district . . . except that any time consumed in excess of ten days from the date an order of removal . . . and the defendant's arrival at the destination shall be presumed to be unreasonable"), at the very latest, the government should have obtained an indictment by September 22, 2008.

2

sanction for its conceded tardiness in obtaining the indictment.[2] I consider the issue de novo.[3] See Fed. R. Crim. P. 59(b)(3).

## II.  DISCUSSION

In determining whether to dismiss with or without prejudice based on a violation of the STA, the district court must consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1); see also United States v. Killingsworth, 507 F.3d 1087, 1090 (7th Cir. 2007). The Act adopts no presumption in favor either sanction. See, e.g., United States v. Johnson, 29 F.3d 940, 945 (5th Cir. 1994); United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994); United States v. Giambrone, 920 F.2d 176, 180 (2d Cir. 1990). As the Supreme Court has explained:

> It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays. Nonetheless, the Act does not require dismissal with prejudice for every violation. Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely. If the greater deterrent effect of barring reprosecution could alone support a decision to

---

[2] Ordinarily, a defendant will move to dismiss the complaint when the government fails to indict within thirty days. However, courts have recognized – and the parties agree – that dismissal of those counts in the indictment corresponding to the counts in the complaint is an appropriate sanction for a violation of § 3161(b)'s thirty-day rule. See, e.g., United States v. Spagnuolo, 469 F.3d 39, 43-44 (1st Cir. 2006); United States v. Gamboa, 439 F.3d 796, 803-04 (8th Cir. 2006); United States v. Pollock, 726 F.2d 1456, 1462-63 (9th Cir. 1984); United States v. Archer, 984 F. Supp. 321, 325 (E.D. Pa. 1997); see also United States v. Jean, 25 F.3d 588 (7th Cir. 1994). The instant indictment contains only one count, which corresponds to the charge in the indictment.

[3] Neither side contests the operative facts or requests an evidentiary hearing.

3

dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.

United States v. Taylor, 487 U.S. 326, 342 (1988) (citation omitted).

## A. Seriousness of the Offense

The charged offense is undoubtedly serious, carrying a statutory penalty range of ten years to life in prison. 18 U.S.C. § 2422(b); see United States v. Koory, 20 F.3d 844, 847 (8th Cir. 1994) (finding offenses serious based on stiff statutory penalties). Defendant argues that because this particular case arose out of an internet sting operation and thus did not involve an actual child, it is less serious. He further argues that the record shows that he abandoned his efforts to meet with "Maria" shortly after he arrived in Wisconsin, heading back home to Idaho.[4]

I cannot agree that the offense is less serious because "Maria" was actually an undercover police officer. Section 2422(b) prohibits child enticement, not child sexual assault. Courts allow § 2422(b) prosecutions in internet sting cases under the theory that "guilt arises from the defendant's knowledge of what he intends to do," i.e. engage in sexual activity with a person he believes to be a minor. United States v. Meek, 366 F.3d 705, 718 (9th Cir. 2004); see also United States v. Helder, 452 F.3d 751, 754-56 (8th Cir. 2006); United States v. Tykarsky, 446 F.3d 458, 466-67 (3d Cir. 2006). As the Tykarsky court explained, the legislative history of § 2422(b) shows that Congress sought to "address the challenges of computer crimes 'by providing law enforcement with the tools it needs to investigate and bring to justice

---

[4] I will assume that I may consider defendant's arguments based on the underlying factual allegations, rather than applying a categorical approach to determining the seriousness of the offense. Given the statutory penalties adopted by Congress, the offense is clearly a serious one as a general matter.

4

those individuals who prey on our nation's children.'" 446 F.3d at 467 (quoting H.R. Rep. No. 105-557, at 10 (1998)):

> It is the view of the Committee that law enforcement plays an important role in discovering child sex offenders on the Internet before they are able to victimize an actual child. Those who believe they are victimizing children, even if they come into contact with a law enforcement officer who poses as a child, should be punished just as if a real child were involved. It is for this reason that several provisions in this Act prohibit certain conduct involving minors and assumed minors.

Id. (quoting H.R. Rep. No. 105-557, at 19).

In the present case, the complaint alleges that defendant – using the screen name "jack.meoff55" – engaged in sexually explicit chats with a person he believed to be a fifteen-year-old girl. He asked "Maria" to meet him in the Wisconsin Dells, told her he would "bring condoms" and warned her to be careful because she was meeting an "older guy" – "don't want the law on us." (Aff. in Support of Criminal Compl. ¶¶ 9-10.) He later told "Maria" to make sure Yahoo was not saving her chats and asked her to write an e-mail saying she really was eighteen years old. (Id. ¶ 16.) Eventually, defendant made very specific plans to meet Maria and discussed in highly explicit terms what he planned to do with her. (Id. ¶¶ 18-24.)

The government further alleges that defendant then traveled to Wisconsin, communicating with "Maria" by telephone and text message. However, while standing in line to rent a car, defendant apparently heard a rental agent being asked to check if Gary Queen had rented a vehicle. Defendant immediately contacted "Maria," alerted her that the police had found out about them, and left. (Govt.'s Resp. to Def.'s Objections at 3, discussing preliminary hearing testimony.) Thus, the record suggests that defendant did not abandon his plans because he had second thoughts, but rather because he suspected that the police were on to him.

5

Finally, defendant argues that according to a recent study the threat to children from older predators has been overstated. He states that, according to the study, youths are at greater risk from on-line bullying or solicitation by peers than from older men lurking in chat rooms. Enhancing Child Safety & Online Technologies: Final Report of the Internet Safety Technical Task Force (Dec. 31, 2008).[5] The Report does indicate that "the image presented by the media of an older male deceiving and preying on a young child does not paint an accurate picture of the nature of the majority of sexual solicitations and Internet-initiated offline encounters." Id. at 16. But the fact that other forms of troublesome on-line conduct may be more prevalent does not dilute the seriousness of the conduct at issue here. Cf. United States v. Wright, 6 F.3d 811, 814 (D.C. Cir. 1993) ("The district court should judge the seriousness of an offense upon its own merits, and not by whether or not it is commonplace."). The Report also states: "Sexual predation on minors by adults, both online and offline, remains a concern. . . . The Task Force notes that more research specifically needs to be done concerning the activities of sex offenders in social network sites and other online environments . . . ." Report at 4.

I agree that courts should not decide cases based on hysteria about a particular type of crime. However, under the circumstances of this case, the seriousness of the offense weighs strongly in favor of dismissal without prejudice.

**B.    Circumstances Leading to Dismissal**

The government indicates that its failure to timely indict defendant arose from a misapprehension of its duty to do so within thirty days of arrest rather than within thirty days of

---

[5]See http://cyber.law.harvard.edu/sites/cyber.law.harvard.edu/files/ISTTF.

6

appearance in this district.⁶ The government notes that it took the Marshal's Service about six weeks to get defendant from North Dakota to Wisconsin, but concedes that this has no bearing on its failure to take the case to the grand jury within thirty days of defendant's arrest. The government further concedes that defendant was detained during the delay.⁷

While the government should be aware of and fulfil its obligations under the STA regardless of where the defendant is arrested, I cannot conclude that this factor weighs strongly in favor of dismissal with prejudice. First, excluding no time under §§ 3161(h)(1)(E) & (F), the indictment was returned about five weeks late; granting full exclusions under those provisions it was about three weeks late. Thus, the delay was not significant. See United States v. Arango, 879 F.2d 1501, 1508 (7th Cir. 1989) (finding that a three month delay was not "per se 'substantial' enough to justify dismissing the charges with prejudice").

Second, the record shows that the government's violation was inadvertent, rather than an attempt to gain some tactical advantage. See United States v. Richardson, 537 F.3d 951, 958 (8th Cir. 2008) (dismissing without prejudice where there was no evidence of any attempt by the government to gain a tactical advantage); United States v. McKinney, 395 F.3d 837, 842 (8th Cir. 2005) (dismissing without prejudice where the government did not act in bad faith or with improper motive); see also United States v. Saltzman, 984 F.2d 1087, 1093 (10th Cir. 1993) ("In evaluating the second aspect of the test, facts and circumstances leading to the dismissal, the court should focus 'on the culpability of the delay-producing conduct.'") (quoting

⁶The STA's seventy-day clock for getting a defendant to trial does list as a triggering event the date the defendant appears before a judicial officer in the charging district. 18 U.S.C. § 3161(c)(1).

⁷The magistrate judge granted defendant bail on February 4, 2009, after the government conceded that the case had to be dismissed.

7

United States v. Hastings, 847 F.2d 920, 925 (1st Cir. 1988)). Indeed, based on his failure to raise the issue prior to the return of the indictment, it appears that defendant's first lawyer may have also believed that the thirty-day period ran from defendant's appearance in this district rather than from the date of arrest. See United States v. Lopez, No. 97-4168, 1998 WL 892297, at *3 (10th Cir. Dec. 23, 1998) ("The district court noted the delay here resulted solely from inadvertent noncompliance by both parties and not from any deliberate government intent to manipulate the proceedings for a tactical advantage.").

Third, I cannot conclude that defendant suffered significant prejudice based on the delay. In his objections, defendant focuses on the facts relating to his detention and transportation from North Dakota to Wisconsin. He notes that he was taken to a detention center in Oklahoma City, where he was unable to make phone calls. Nor was he able to get a response to correspondence he sent to the lawyer who represented him at the removal hearing in North Dakota. While in Oklahoma City, defendant was housed with inmates serving or facing lengthy sentences and was threatened with personal harm due to the nature of the charge against him. Finally, he was denied access to legal materials so he could research his own situation. Not until he reached this district was he able to speak to counsel and obtain legal advice.

While I do not condone these events, I cannot conclude that they weigh strongly in favor of dismissal with prejudice. Defendant would have been detained and removed regardless of the government's tardiness in obtaining the indictment. Defendant points to nothing occurring during the delay and transport prejudicing his ability to defend himself in this case. Defendant contends that he was detained longer than necessary, but he lays blame for that on his first lawyer, who failed to present a proper release plan at the September 26 detention hearing.

8

This failure had nothing to do with the government's violation of the STA.[8]

## C. Impact of Re-prosecution on Administration of the STA and Justice

Under this factor, the court may consider "a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question." Giambrone, 920 F.2d at 180 (citing Taylor, 487 U.S. at 338-39). If such a showing is made, the court may conclude that dismissals without prejudice have provided an insufficient incentive for the government to comply with the STA. Id.

> A pattern of disregard for speedy trial rights is also detrimental to the administration of the criminal justice system since delays risk the loss of important evidence, and repetitive prosecutions on the same charges cause wasteful replication of effort. Such delays also harm both the interest of the defendant and the interest of the public, for if the defendant is innocent, he has an interest in early vindication; and if he is guilty, the public has an interest in expeditious punishment for a variety of reasons, including the fact that the closer in time the punishment is to the crime, the greater its rehabilitative effect.

Id. at 181.

Citing United States v. Villanueva, No. 07-CR-149, 2007 WL 1813922 (E.D. Wis. June 21, 2007), defendant argues that systemic problems exist in this district, requiring dismissal with prejudice. In Villanueva, the same magistrate judge who issued the recommendation in this case criticized the delays in transporting defendants arrested in other states to this district. In that case, it took the government eighty-five days to get the defendant from Texas to Wisconsin, and twelve more days to indict. Id. at *2. Although the magistrate judge ultimately

---

[8] I have considered the fact that a motion under § 3161(b) made at the initial appearance or detention hearing may have resulted in defendant's release then, rather than months later, but I also cannot conclude that this weighs strongly in favor of forever barring defendant's prosecution arising out of these events.

9

dismissed without prejudice based primarily on the seriousness of the offense, he was nevertheless troubled by the government's conduct:

> The government attempts to argue that the delay in obtaining the indictment was related to the delay in the defendant being transported to this district. As stated earlier, the court finds no reason to conclude that any problem with the defendant's transportation should have had any affect upon the government's ability to present the case to the grand jury. There is no indication that the defendant was required to be present in the district prior to the government presenting the matter to the grand jury. Rather, the delay in obtaining the indictment and the delay in transporting the defendant are distinct issues, although both are cause for substantial concern for this court. But since they are distinct, it is only the delay in the government seeking the indictment that is relevant to the present determination of whether the complaint should be dismissed with prejudice.
>
> In concluding that the defendant's transportation problems did not limit the government's ability to present the matter to the grand jury, the government is left with no explanation for its failure to timely obtain an indictment. If the government decides to wait until the defendant arrives in this district prior to obtaining an indictment in reliance upon the United States Marshal's ability to promptly transport the defendant, the government does so at its own peril. If the government fails to diligently watch the calendar and permits more than one-hundred days to elapse between an arrest and an indictment, the court will likely order the complaint dismissed with prejudice in all but the most serious cases.

Id. at *4-5. The magistrate judge then reviewed the government's recent track record on timely indicting defendants arrested in other districts, finding its performance lacking:

> Simply by reviewing the dockets of these cases, it is clear that there have recently been substantial problems in promptly transporting defendants to this district. These problems caused by such delays in transportation must be immediately corrected. . . . If the government (U.S. Attorney and U.S. Marshal) fail to correct the underlying causes of these problems and another violation of this nature occurs, the dismissal will likely be with prejudice. The court cannot give the government a pass to avoid the consequences of the Speedy Trial Act simply because the worst violations occur in the most serious cases. Such inaction by the court would vitiate the effectiveness of the Speedy Trial Act.

Id. at *5.

Although this case represents a recurrence of the problem identified in Villanueva,

10

defendant concedes that his case is the only recurrence in over a year. The government provided defendant with statistics demonstrating that all other defendants have been returned and timely indicted since Villanueva. Nevertheless, the fact that the government was previously warned about this issue does weigh in favor of dismissal with prejudice.[9]

### III. CONCLUSION

Balancing the § 3162(a)(1) factors, I conclude that dismissal without prejudice is the appropriate sanction. Although this represents a recurrence of conduct about which the U.S. Attorney's Office was previously warned, the record does not suggest an ongoing, systemic problem demanding the most severe sanction. Further, as discussed above, the instant offense is very serious, and the circumstances of the violation relatively innocuous.

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is adopted, defendant's motion granted, and the indictment is dismissed without prejudice.

Dated at Milwaukee, Wisconsin this 24th day of March, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[9] The record contains no evidence that the delay has harmed or impeded the administration of justice in this case.

11